IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 16-cv-01090-LTB-NYW

KATHY WHITSON,

     Plaintiff,

v.

UNITED STATES FOREST SERVICE, an agency of the U.S. Department of
Agriculture,

     Defendant.

_____

## MEMORANDUM OPINION AND ORDER

_____

Babcock, J.

     This case is before me on Defendant's Motion for Summary Judgment [Doc #
27] and Plaintiff's Cross Motion for Summary Judgment [Doc # 30]. After
consideration of the motions, all related pleadings, and the case file, I grant both
motions in part and deny them in part and hold the case in abeyance pending
further proceedings.

## I. Facts

     In this case in which Plaintiff alleges that Defendant United States Forest
Service (The "Forest Service") violated the Freedom of Information Act ("FOIA"), 5
U.S.C. § 552, by failing to fully respond to her July 27, 2015 FOIA request for
agency records, the following facts are undisputed unless otherwise noted.

## A. Background

The Forest Service is an agency within the United States Department of Agriculture ("USDA") charged with managing 193 million acres of National Forests and National Grasslands. Forest Service lands are divided into nine geographic regions. The Carson National Forest, located in north-central New Mexico, is one of 11 National Forests in Region 3. The Jicarilla Ranger District (the "District"), located in Bloomfield, New Mexico, is one of seven administrative units within the Carson National Forest and one of over 600 Forest Service Ranger Districts nationwide. The District had approximately 17 employees, and there was considerable tension among the District's employees during the time period relevant to this case.

In coordination with the Bureau of Land Management, the Forest Service administers a number of wild horse or burro territories including the Jicarilla Wild Horse Territory. The Forest Service's responsibilities for the Wild Horse and Burro Program includes euthanasia of wild horses and burros to minimize the suffering of sick and/or injured animals. The Wild Horse and Burro Program is controversial, and there are organizations dedicated to these animals. In administering the Program, Plaintiff alleges that the Forest Service directed untrained employees to use firearms to kill wild horses, in part, to avoid the cost of paying a veterinarian to perform euthanasia services.

The subject of Plaintiff's FOIA request is a misconduct investigation related, in part, to administration of the District's Wild Hose and Burro Program. The fact

of this investigation was common knowledge among the District's employees. Plaintiff alleges that the Forest Service made no contemporaneous request that District employees keep the details of the investigation or any related records confidential and never contacted any person involved in the investigation to determine if they had privacy concerns. Plaintiff further alleges that the Forest Service made no effort to withhold specific information gathered during the investigation from District employees. The Forest Service disputes this allegation and alleges that it did not provide specific information regarding the misconduct investigation to District employees.

## B. Plaintiff's FOIA Request and the Forest Service's Search for Responsive Documents

On July 28, 2015, the Forest Service received Plaintiff's FOIA request for "records pertaining to employee misconduct investigation MI-2015-29, Jicarilla Ranger District, Carson National Forest." Specifically, Plaintiff requested the following nine items or categories of documents:

1. Request for Misconduct Investigation Form

2. Correspondence between the Employee Relations Program Manager and Assigned Investigator

3. Investigation Plan

4. Report of Investigation (ROI) and List of Exhibits

5. All Exhibits

6. Documentation

7. Evidence

8.  Depositions

9.  Conclusions and Final Disposition Documents

Numbers 1, 3, 4, and 5 of Plaintiff's request reference specific documents though Plaintiff nonetheless asserts these requests could encompass other documents.

With respect to category Number 2, "Correspondence between the Employee Relations Program Manager and Assigned Investigator," the Forest Service interpreted this request to include letters, emails, and similar documents between the Employee Relations ("ER") Program Manager and the Assigned Investigator, as well as the ER Specialist though this individual is not specifically named in the request. Plaintiff asserts that this interpretation is too narrow and that this request included other persons who exchanged correspondence regarding the misconduct investigation.

With respect to Number 6, "Documentation," the Forest Service interpreted this request to mean documentation of the investigation, *i.e.*, records that were generated or obtained during the course of the subject investigation that did not clearly fit into any other category of records.

With respect to Number 7, "Evidence," the Forest Service interpreted this request to mean material identified by the investigators as having evidentiary value. Plaintiff assets that this interpretation is too narrow and excludes agency records created or obtained by unidentified individual investigators. Plaintiff also asserts that the Forest Service provided no evidence of the method used during the FOIA records search to determine which records had "evidentiary value."

4

With respect to Number 8, "Depositions," the Forest Service interpreted this request to include formal depositions though witness statements were included as exhibits to the ROI in response to Number 4. Plaintiff asserts that this request includes witness statements, interviews, and other means used to gather employee statements.

With respect to Number 9, "Conclusions and Final Disposition Documents," the Forest Service's FOIA analyst interpreted this request in light of her review of other responsive documents and her basic understanding of what concludes the investigatory process in cases such as this. Plaintiff asserts that this interpretation is too narrow and in support of this assertion cites the conclusions and final disposition documents from a purportedly similar investigation that were posted online.

The FOIA analyst initially assigned to handle Plaintiff's request compiled 294 pages of documents before retiring. After this case was filed on May 12, 2016, the Forest Service assigned Danielle Adams to work on Plaintiff's FOIA request. After reviewing the file and familiarizing herself with the investigative process through discussions with Forest Service personnel involved in the subject misconduct investigation, Ms. Adams concluded that supplemental searches for documents responsive to Plaintiff's FOIA request were appropriate and conducted additional searches over a period of approximately two months.

Specifically, Ms. Adams determined that Forest Service internal misconduct investigations are generally conducted by personnel in the Human Resources

Management ("HRM") office located at the Forest Service's Albuquerque Service Center. Ms. Adams then identified the following HRM employees responsible for conducting the subject misconduct investigation: (1) the assigned Personnel Misconduct Investigator who conducted the investigation and prepared the ROI; (2) the Investigator's supervisor; (3) the assigned ER Specialist who reviewed the ROI and supporting materials and directed any supplemental investigation; and (4) the assigned ER supervisor and ER manager who also reviewed the ROI and supporting materials and made a recommendation to the official who requested the investigation. Ms. Adams also identified the Requesting Official who requested the investigation and ultimately decided what personnel action, if any, to take based on the results of the investigation as someone who might have responsive documents.

On June 8, 2106, Ms. Adams sent a request for documents ("RFD") via email to each person she had identified as being involved in the misconduct investigation either directly or through their designated liaison. Ms. Adams' June 8, 2016 RFD provided a near-verbatim list of the nine items Plaintiff was seeking relating to misconduct investigation MI-2015-29 and had a copy of Plaintiff's FOIA request attached. On June 9, 2016, Plaintiff sent a similar request to the Requesting Official.

In reviewing the documents received pursuant to the RFD, Ms. Adams determined that she had been mistaken about the identity of the ER Specialist and sent an email on June 20, 2016 to the actual ER Specialist with a copy of the June 8, 2016 RFD with Plaintiff's FOIA request attached. Ms. Adams also determined

that ER had requested a " management inquiry" - *i.e.*, a request for specific information from management personnel in the Carson National Forest Supervisor's Office.  Ms. Adams identified the person who responded to the management inquiry and sent an RFD to this individual on July 26, 2016 via email.  This RFD was substantially identical to the June 9, 2016 RFD sent to the Requesting Official.

Ms. Adams also directed IT personnel to conduct two searches of the Forest Services's email archive for correspondence that could be responsive to category Number 2 of Plaintiff's request.  The first request mistakenly asked for emails for the time period of March of 2016 through December of 2016.  The second search asked for emails for the time period January 1, 2015 through June 30, 2016.

Linda Lasko, another Forest Service employee, reviewed 3,725 emails collected pursuant to the search of the Forest Service's email archive to see if the emails or their attachments were responsive to any of the items or categories listed in Plaintiff's FOIA request.  After removing all non-responsive and duplicate emails, Ms. Lasko identified 15 non-dulpicative or partially non-duplicative responsive emails and 14 responsive attachments totaling 77 pages.

## C.  Response to Plaintiff's FOIA Request

The Forest Service produced 291 pages of material to Plaintiff pursuant to her July 27, 2015 FOIA request on September 2, 2016.  The Forest Service produced another 579 pages of material approximately one month later, and an additional 3 pages of materials On November 17, 2016.  On January 12, 2017, the Forest Service

produced 62 pages of material to Plaintiff pursuant to the search of the Forest Service's archived emails. The other 15 pages of material identified by Ms. Lasko originated in the Office of Inspector General ("OIG") and were referred to that office for a direct response to Plaintiff. OIG released these pages, subject to redaction, on January 13, 2017.

The Forest Service asserts that some information was initially withheld from production to protect Plaintiff's privacy though Plaintiff asserts that the Forest Service never inquired if she had privacy concerns prior to the filing of this case. After receiving an authorization from Plaintiff, the Forest Service "re-processed" the initial 291 pages of materials produced to Plaintiff and re-produced 26 pages of materials containing information not previously released. An additional 72 pages of documents were subsequently similarly re-produced.

Of the total pages of materials produced to Plaintiff, 149 pages were "redacted in full," *i.e.*, withheld. Plaintiff asserts that at least 579 other pages were "heavily redacted." The Forest Service made redactions to the materials produced in response to Plaintiff's FOIA request pursuant to FOIA Exemptions 5, 6, 7(C) & (E), 5 U.S.C. § 522(b). Plaintiff contends that these Exemptions are inapplicable and that the Forest Service's withholding of responsive records through full or partial redaction was therefore improper.

The Forest Service submitted a *Vaughn* index describing the documents produced and explaining its application of the FOIA exemptions with its Motion for Summary Judgment. *See* Doc # 27-3. The Forest Service subsequently revised its

*Vaughn* Index, *see* Doc # 31-2, Att. 2, and this Revised *Vaughn* Index will be the focus of my analysis of Plaintiff argument that the Forest Service's *Vaughn* index fails to satisfy the legal standards set forth in *Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir. 1973) and its progeny.

## II.  Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  Where, as here, the parties file cross-motions for summary judgment, I am "entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts."  *James Barlow Family Ltd. P'ship v. David M. Munson, Inc.,* 132 F.3d 1316, 1319 (10th Cir. 1997). A material fact is one that might affect the outcome of the dispute under the applicable law.  *Ulissey v. Shvartsman,* 61 F.3d 805, 808 (10th Cir.1995).  In reviewing the parties' cross-motions, I must construe all inferences in favor of the party against whom the motion under consideration is made.  *Pirkheim v. First Unum Life Ins. Co.,* 229 F.3d 1008, 1010 (10th Cir. 2000).

In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to FOIA.  *Carney v. U.S. Dep't of Justice,* 19 F.3d 807, 812 (2d Cir. 1994).  "The adequacy of the search ... is judged by

a standard of reasonableness and depends ... upon the facts of each case." *Steinberg v. U.S. Dep't of Justice,* 23 F.3d 548, 551 (D.C. Cir.1994) (*quoting Weisberg v. U.S. Dep't of Justice,* 745 F.2d 1476, 1485 (D.C. Cir. 1984))). In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith. *Id.*

## III. Analysis

### A. The Forest Service's Evidence

The first issue relevant to both parties' summary judgment motions is the sufficiency of the Forest Service's evidence regarding its execution of its duties under FOIA. The challenged evidence consists of the declarations of James Duran and Danielle Adams and the Forest Service's Revised *Vaughn* Index describing the information it withheld and identifying the exemptions it claims support this withholding. *See* Doc #s 27-1; 27-2; 31-1; & 31-2, Att. 2.

Mr. Duran is the Forest Supervisor for the Carson National Forest and is familiar in this capacity with the District Office. Doc # 27-1, ¶¶ 1 & 4. In particular, Mr. Duran was familiar with tension among the employees in the District Office and controversy surrounding the District's Wild Horse and Burro Program. *Id.* at ¶¶ 8 & 12.

Ms. Adams is a Forest Service Employee who was assigned Plaintiff's July 27, 2015 FOIA request on May 20, 2016 after the analyst to whom it was originally assigned retired. Doc # 27-1, ¶¶ 1 & 6. Ms. Adams reviewed the case file on Plaintiff's request and conducted supplemental searches for responsive documents

over a period of approximately two months as detailed in her declarations. Doc #s 27-1, ¶¶ 9-16 & 31-1, ¶¶ 3-13. Based on his familiarity with the District Office, Mr. Duran assisted Ms. Adams in evaluating privacy interests that might be impacted in responding to Plaintiff's FOIA request. Ex. 2, ¶ 31.

Plaintiff asserts that the declarations of Mr. Duran and Ms. Adams provide insufficient detail, lack specificity, and offer only conclusory statements. While this assertion may be somewhat descriptive of Mr. Duran's declaration, this is the natural result of the limited role he played in the search for documents responsive to Plaintiff's FOIA request and does not reflect any bad faith on the part of the Forest Service. Mr. Duran's declaration is sufficient for the purpose for which it was offered, *i.e.*, to provide support for the privacy exemptions claimed by the Forest Service in responding to Plaintiff's FOIA request.

Plaintiff's assertion that Ms. Adams' declarations suffer from insufficient detail, lack of specificity, and the use of conclusory statements, however, is wholly without merit since both of Ms. Adams' declarations thoroughly detail her efforts to identify and produce documents responsive to Plaintiff's FOIA request.

Plaintiff's assertion that Ms. Adams' declarations represent *post hoc* allegations about the Forest Service's response to her FOIA request also fails to undermine the evidentiary value of Ms. Adams' declarations. While they may not have been prepared contemporaneously with her search efforts, Ms. Adams' declarations thoroughly detail what she personally did to respond to Plaintiff's FOIA request. The fact that the Forest Service did not provide a declaration from

the retired analyst initially assigned Plaintiff's FOIA request does not mean that it has failed to produce competent evidence to support its summary judgment motion. *See Carney,* 19 F.3d at 814 ("An affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e); there is no need for the agency to supply affidavits from each individual who participated in the actual search."). Moreover, it is apparent from her declarations that Ms. Adams reviewed the work of the first analyst and essentially conducted a new search that yielded the bulk of the materials produced to Plaintiff.

As for the Forest Service's Revised *Vaughn* Index, Plaintiff argues that it is inadmissible because it is not signed by the person who prepared it. In support of this argument, Plaintiff cites D. C. Colo. L Civ R 5.1(a) which provides that each pleading and document filed in a civil action shall be signed. The Forest Service's Revised *Vaughn* Index, however, is not an independent document but rather an exhibit to other properly formatted documents. Plaintiff's remaining arguments regarding the sufficiency of the Forest Service's Revised *Vaughn* Index will be addressed later in this Order.

In sum, I decline to dismiss the Forest Service's evidence outright as Plaintiff suggests. The question of whether this evidence is sufficient to meet the Forest Service's burden of demonstrating that it conducted a reasonable search and that any withheld documents or portions of documents fall within a FOIA exception will be addressed in the remainder of this Order.

**B. The Reasonableness of the Forest Service's Search**

In analyzing the Forest Service's search for documents responsive to Plaintiff's FOIA request, I look at whether the Forest Service conducted "a search reasonably calculated to uncover all relevant documents." *Steinberg*, 23 F.3d at 551 (D.C. Cir. 1994) (*quoting Weisberg, supra*). "The question is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Id.* Mere speculation that other documents may exist does not preclude a finding that the Forest Service conducted a reasonable search. *SafeCard Servs., Inc. v. SEC,* 926 F.2d 1197, 1201 (D.C. Cir. 1991).

Plaintiff's first assertion in support of her argument that the Forest Service failed to conduct a reasonable search for documents responsive to her FOIA request is that the Forest Service did not request records from certain individuals and offices. In support of this assertion, Plaintiff first notes that she personally interacted with six individuals regarding the subject misconduct investigation but there is no evidence that any of these individuals conducted a FOIA search. The mere fact that Plaintiff had some unspecified contact with these individuals, however, does not mean that the Forest Service's search was inadequate because it did not include specific search requests to these individuals. In addition, because Ms. Adams focused her search efforts on the Forest Service offices and personnel responsible for conducting the subject misconduct investigation, any responsive materials that these six individuals may have had were likely included in those

collected by Ms. Adams from other individuals.

Plaintiff next asserts that the Forest Service should have referred her request to the USDA's OIG. In support of this assertion, Plaintiff states that she exchanged emails with this office regarding the subject misconduct investigation though these emails are not attached to Plaintiff's declaration. *See* Doc # 28-2, ¶ 9.

It is undisputed that the Forest Service has an obligation to construe Plaintiff's FOIA request liberally and to refer the request to another office if it is reasonably likely to have responsive records. *See Friends of Blackwater v. U.S. Dep't of Interior,* 391 F. Supp. 2d 115, 122 (D.C. Cir. 2005). As the Forest Service points out, however, Plaintiff's FOIA request was directed only to the Forest Service and sought records relating to an employee misconduct investigation that was conducted by Forest Service employees and which Plaintiff identified by a Forest Service "MI" number. Under these circumstances, Plaintiff's FOIA request did not put the Forest Service on notice that it should refer the request to OIG, and the Forest Service's failure to do so does not undermine the reasonableness of its search. *See Kowalczyk v. Dep't of Justice,* 73 F.3d 386, 389 (D.C. Cir. 1986) (agency responding to FOIA request is not obliged to look beyond four corners of the request for leads to the location of responsive documents). *Compare Rocky Mountain Wild, Inc. v. U.S. Forest Serv.,* 138 F. Supp. 3d 1216, 1221-22 (D. Colo. 2015) (agency failed to conduct reasonable search for records when it did not include entities that plaintiff's request suggested may have responsive records).

Plaintiff similarly argues that the Forest Service unreasonably excluded the District Office, the Carson National Forest Supervisor's Office, the Southwest Regional Office, the Forest Service's Washington Office, and the Office of General Counsel from its search for records responsive to Plaintiff's FOIA request. First, the Forest Service did not wholly exclude the Carson National Forest Supervisor's Office from its search efforts. Rather, Ms. Adams sent an RFD to the individual in that office who had responded to a management inquiry requested in connection with the subject misconduct investigation. *See* Doc # 31-1, ¶ 11. As for the other offices, the mere fact that they are in the Forest Service's "chain of command" does not mean that they were likely to possess records responsive to Plaintiff's FOIA request, especially records that were unique to those collected from the offices responsible for conducting, reviewing, and responding to the subject misconduct investigation. Again then, the Forest Service's partial failure to search for records at the Forest Service offices identified by Plaintiff does not render its search unreasonable.

Plaintiff next argues that the Forest Service cannot meet its burden of demonstrating that its search for materials responsive to Plaintiff's FOIA request was reasonable because it has failed to provide any evidence regarding the search methods used prior to Ms. Adams' assignment to her request in May of 2016. I conclude, however, that such evidence is unnecessary because it is readily apparent from Ms. Adams' detailed declarations that she essentially started the search anew once Plaintiff's FOIA request was assigned to her.

Finally, Plaintiff argues that the Forest Service cannot meet its burden of demonstrating a reasonable search because there is no evidence to establish a "cut-off" date. As Plaintiff acknowledges, the date of the actual search is generally considered a reasonable cut-off date. *See Edmonds Inst. v. U.S. Dep't of Interior,* 383 F. Supp. 2d 105, 111 (D.C. Cir. 2005) ("The D.C. Circuit has all but endorsed the use of date-of-search as the cut-off date for FOIA requests") (*citing Pub. Citizen v. Dep't of State,* 276 F.3d 634, 642 (D. C. Cir. 2002)). Here, because of the Forest Service's lengthy delay in responding to Plaintiff's FOIA request, the cutoff dates ranged from June 8, 2016 to June 30, 2016 per the declarations of Ms. Adams and Ms. Lasko, and the latest responsive document is dated May 2, 2016 (*see* Ex. 31-2, ¶ 4). I conclude that these cut-off dates were reasonably calculated to lead to the collection of all documents responsive to Plaintiff's FOIA request.

In sum then, I conclude that the Forest Service has met its burden of demonstrating that it conducted a search reasonably calculated to uncover all documents relevant to Plaintiff's FOIA request. Although Plaintiff advocates for a far more exhaustive search, the applicable standard requires only that the Forest Service conduct a reasonable search based on the request that Plaintiff submitted.

## C. Sufficiency of the Forest Service's Revised *Vaughn* Index

"[T]he underlying purpose of [a] *Vaughn* index is to permit the District Court to make a rational decision whether the withheld material must be produced without actually viewing the documents themselves, as well as to produce a record that will render the District Court's decision capable of meaningful review on

appeal." *Dellums v. Powell,* 642 F.2d 1351, 1360 (D.C. Cir. 1980). "All that is required, and it is the least that is required, is that the requester and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." *Hinton v. Dep't of Justice,* 844 F.2d 126, 129 (3d Cir. 1988).

The Forest Service's Revised *Vaughn* Index (Doc # 31-2, Att. 2) divides the documents responsive to Plaintiff's FOIA request into six "record groups." For each record group, the Forest Service provides a description of the included documents; lists the corresponding Bates numbers; identifies by number the exemptions relied on by the Forest Service in making redactions to the included documents; and explains the Forest Service's rationale for relying on the listed exemption to withhold information.

Plaintiff makes a number of general objections to the Forest Service's Revised *Vaughn* Index. First, Plaintiff objects to the Forest Service's citation to Exemption 6 and Exemption 7(C) concurrently to support its withholding of certain information. Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C.A. § 552(b)(6). Exemption 7(C) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to constitute an unwarranted invasion of personal privacy[.]" 5 U.S.C.A. § 552(b)(7)(C).

Courts have construed the privacy inquiry under Exemptions 6 and 7(C) to be essentially the same though Exemption 7(C) is broader. *Judicial Watch v. Dep't of Justice,* 365 F.3d 1108, 1125 (D.C. Cir. 2004). Thus, it is reasonable for the Forest Service to list both of these exemptions together to support its redactions, and the Court will assume that the Forest Service is asserting that the subject information may be properly characterized as either personnel-type files and records or information compiled for law enforcement purposes. The question of whether the Forest Service has met its burden of demonstrating that one or both of these exemptions is in fact applicable will be addressed in my analysis of the specific claims of exemption made by the Forest Service.

Next, Plaintiff argues that the Forest Service improperly lumped documents together into broad categories. There is no requirement, however, that the Forest Service separately list each document that it is withholding from disclosure in whole or in part. Instead, the Forest Service may explain its withholdings by reference to categories of documents. *Vaughn v. United States,* 936 F.2d 862, 868 (6th Cir. 1991) (citations omitted). When a government agency chooses to rely on categorical determinations as the Forest Service has done, its descriptions of the relevant categories must be specific enough to allow a court to determine, as to each category, whether the claimed exemptions are proper. *Id.* I conclude that the Forest Service has met this standard.

Plaintiff also argues that the Forest Service's Revised *Vaughn* Index provides insufficient explanations for its withholdings because it copied and pasted generic

explanations to different categories of documents. Plaintiff takes particular issue with the Forest Service's explanation for its withholding of materials under Exemptions 6 and 7(C), *see* Doc # 37, p. 30, based on privacy concerns. As set forth above, however, the privacy inquiry under these two exemptions is essentially the same. Preliminarily, I conclude that the Forest Service has adequately explained its redactions under FOIA Exemptions 5, 6, and 7(C) to allow for my de novo review. In reaching this conclusion, I recognize that it may have been difficult for the Forest Service to provide more explanatory detail without revealing the private or privileged information it seeks to protect from disclosure. *See Curran v. Dep't of Justice,* 813 F.2d 473, 476 (1st Cir. 1987) (some degree of generality in FBI's response to FOIA request was understandable and probably essential where otherwise FBI would have had to resort to precise description which would compromise the claimed exemption).

More problematic is the Forest Service's explanation of its redactions based on Exemption 7(E). In each of the three instances where it invoked this Exemption, the Forest Service provided virtually an identical explanation that "[a] small amount of information was withheld [because/that], if released it would reveal law enforcement techniques in a manner that could allow a member of the public to circumvent the law." *See* Doc # 31-2, Att. 2, pp. 2, 4, & 18. The Forest Service further asserts that the information under Exemption 7(E) is incidental to the substance of Plaintiff's request. *Id.* Such general information without even a reference to the relevant area of the law hinders my de novo review of the

applicability of Exemption 7(E).  Whether further steps must be taken to remedy this deficiency depends on whether Exemption 7 is applicable under the facts and circumstances of this case which I will now address.

## D. Applicability of Specific Exemptions Cited by the Forest Service

While the purpose of FOIA is to "open[ ] up the workings of government to public scrutiny," *Stein v. Dep't of Justice,* 662 F.2d 1245, 1252 (7th Cir. 1981), Congress recognized nine exemptions in which disclosure would not be appropriate. 5 U.S.C. § 522(b)(1) - (9).  The government agency bears the burden of demonstrating that a claimed exemption applies. 5 U.S.C. § 552(a)(4)(B).

### 1. Exemption 7(C) & (E)

FOIA Exemption 7 allows a government agency to withhold "records or information compiled for law enforcement purposes" where the disclosure of such information would result in one of six enumerated harms.  5 U.S.C. § 522(b)(7).  The threshold inquiry under Exemption 7 is therefore whether the withheld information was compiled for law enforcement purposes.  This in turn requires an examination of the involved agency to determine whether it exercises law enforcement functions. *Church of Scientology of California v. U.S. Dep't of the Army,* 611 F.2d 738, 748 (9th Cir. 1979), *overruled on other grounds by Animal Legal Defense Fund v. U.S. Food & Drug Admin.,* 836 F.3d 987 (9th Cir. 2016).  An agency exercises law enforcement functions if has a clear law enforcement mandate, such as the FBI, or has a "mixed" function that encompasses both administrative and law enforcement functions. *Id. See also Jordan v. U.S. Dep't of Justice,* 668 F.3d 1188, 1193-95 (10th Cir. 2011)

(recognizing two approaches to interpreting Exemption 7's requirement that withheld information be "compiled for law enforcement purposes," each depending on nature of involved agency's law enforcement authority).

Here, there can be no dispute that the primary function of the Forest Service, unlike the FBI, is not law enforcement. The Forest Service has also failed to demonstrate that it nonetheless qualifies as a mixed-function agency. Moreover, even if the Forest Service can be properly characterized as a mixed-function agency, it still bears the burden of showing that the withheld information was compiled for adjudicative or enforcement purposes. *Stern v. F.B.I.,* 737 F.2d 84, 88 (D.C. Cir. 1984). In the case of internal investigations such as this, the Forest Service must show that the investigation was conducted for law enforcement purposes rather than for general internal monitoring that might reveal evidence that could later give rise to a law enforcement investigation. *Id.* at 89. An internal investigation of an agency's employees is for law enforcement purposes if it focuses "directly on specifically alleged illegal acts, illegal acts of particular identified officials, acts which could, if proved, result in civil or criminal sanctions." *Id.* (*quoting Rural Housing All. v. U.S. Dep't of Agric.,* 498 F.2d 73, 81 (D.C. Cir. 1974)).

Here, the only evidence that the Forest Service cites to show that the subject misconduct investigation was for law enforcement purposes is a conclusory assertion to this effect by Ms. Adams in her declaration and a statement in a partially withheld email exchange that "I let [redacted] know the investigation ... includes several misconduct allegations; one of which may have criminal

implications." *See* Doc #s 27, Ex. 2, ¶ 29 & 28-12, p. 124. This evidence is insufficient to satisfy the Forest Service's burden to show that the subject misconduct investigation was for law enforcement purposes. In fact, the cited quotation instead supports a finding that the investigation was focused on alleged violations of the Forest Service's internal policies and regulations that might incidentally reveal evidence of a single violation of criminal law.

Because the Forest Service has failed to meet its burden of showing either that it is a government agency with law enforcement functions or that the information withheld pursuant to Exemption 7 was compiled for law enforcement purposes, Plaintiff is entitled to summary judgment that Exemption 7 is inapplicable under the circumstances of this case. The Forest Service must therefore disclose the information that it redacted pursuant to Exemption 7(E) to Plaintiff and may not rely on Exemption 7(C) to withhold any other responsive information from Plaintiff. Since the Forest Service also cited Exemption 6 in each instance that it cited Exemption 7(C), the Forest Service's obligation to disclose this information turns on the applicability of Exemption 6 which I now address.

### 2. Exemption 6

FOIA Exemption 6 allows a government agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 522(b)(6). Plaintiff does not contest the Forest Service's assertion that the information withheld pursuant to Exemption 6 is contained in "personnel and medical files and similar files." Thus,

my determination of whether the Forest Service has met its burden of showing that Exemption 6 is applicable to the withheld information turns on whether the disclosure of this information would constitute a clearly unwarranted invasion of personal privacy.

Exemption 6's "clearly unwarranted invasion of personal privacy" language requires a balancing of the individuals' interest in their privacy against the interests of the public in being informed. *Rural Housing All.,* 498 F.2d at 77. This language guides courts to tilt the balance in favor of disclosure. *Id. See also Kurzon v. Dep't of Health and Human Servs.,* 649 F.2d 65, 67 (1st Cir. 1981) (by requiring that invasion of privacy be "clearly unwarranted," "Congress has erected an imposing barrier to nondisclosure under [Exemption 6]").

In the Exemption 6 balancing of interests inquiry, I first determine whether there is, in fact, a privacy interest in the withheld information. The Forest Service asserts that the information withheld implicates significant privacy interests of non-employee third parties who are referenced in these materials; Forest Service employees who provided information to investigators; Forest Service employees who conducted or facilitated the subject misconduct investigation; and the subjects of the misconduct investigation. The Forest Service further asserts that the release of materials either directly or indirectly identifying these individuals could expose them to unwanted contact, harassment, interference with their official duties, or reprisal and embarrassment or stigma for being associated with the misconduct investigation. Doc # 31-2, Att. 1, p 3.

Though the supporting legal authorities cited by the Forest Service largely focus on privacy interests under Exemption 7(C), I conclude that the Forest Service has identified a legitimate privacy interest in the withheld materials. These privacy concerns are exacerbated in this case by the undisputed facts that the misconduct investigation focused in part on a controversial matter and that there is considerable tension among the small number of employees who work for the District. Furthermore, it is plausible that under the circumstances of this case that the protection of this privacy interest would require redactions beyond basic identifiable information such as names and telephone numbers. *See Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.,* 849 F. Supp. 2d 13, 30 (D. C.C. 2012) (accepting agency determination that unless materials were withheld in their entirety identity of target or witness in investigation would be revealed and recognizing that deference to agency's targeted redactions was warranted since court was not in position to make line-by-line determination of which statements would expose witness's identity).

I next look at whether there is a public interest in the information that implicates privacy concerns. Though Plaintiff's FOIA request does not identify such an interest, Plaintiff has since indicated that her request was based on her personal interest in determining whether the Forest Service conducted a thorough investigation and that she has shared, and will continue to share, the information received with other persons interested and engaged in public land management, whistleblower protection, animal protection, and government oversight, including

elected government officials. *See* Doc # 28-2, ¶¶5 & 6. Plaintiff also asserts a public interest in "the Forest Service's handling of serious issues involving the management and destruction of wild horses and burros. *Id.* at ¶ 7.

In executing Exemption 6's balancing inquiry, the Forest Service considered "an asserted public interest in alleged employee misconduct, the agency's management of public lands on the Jicarillo Ranger District, and in particular, management of wild horses and burros on the District." Doc # 27, pp. 8-9, ¶ 40. However, in the cover letters accompanying its release of documents to Plaintiff, the Forest Service more narrowly defined the public interest as the Forest Service's management of wild horses and burros in the District. *See* Doc #s 27-2, Atts. B,C & D; 31-2, Att. 1. It is therefore undisputed that the public has some interest in the information sought by Plaintiff's FOIA request, and I conclude that the public interest extends beyond alleged misconduct regarding the District's management of wild horses and burros to all allegations of misconduct and the Forest Service's handling of all allegations of misconduct. *See Nat'l Whistleblower Ctr.,* 849 F. Supp. 2d at 32 ("The public no doubt has an interest in knowing whether [government agency] properly investigates allegations on misconduct...").

As explained in its Revised *Vaughn* Index (Doc # 31-2, Att. 2), the Forest Service determined that privacy interests outweighed the public interest when the information at issue (1) consisted solely of names, tiles, organizational affiliation, or contact information for individuals; (2) concerned allegations that were unsubstantiated; (3) would reveal the identity of the subject(s) of any substantiated

allegations but would not add substantively to information disclosed elsewhere; or (4) would indirectly reveal the identity of a witness or third party. The Forest Service further explained that these last two categories included (1) references to specific conversations or events that would allow other involved parties to identify the source of the information; (2) references to specific events that would identify an individual by reference to their duties, roles, responsibilities, or authority; and (3) certain references to organizational and/or personal relationships among individuals.

On its face, the Forest Service's explanation of its redactions supports the conclusion that providing this information would constitute a clearly unwarranted invasion of personal privacy with one significant caveat. From my review of the redacted documents provided to Plaintiff (*see* Doc # 28-12), it appears that the Forest Service may have limited its consideration of the public interest to allegations relating to the District's Wild Horse and Burro Management Program as indicated in its correspondence with Plaintiff. For instance, in the disclosed "Request for Administrative Employee Misconduct Investigation," Doc # 28-12, pp. 1-4, all information regarding the 14 allegations requiring investigation are redacted but for the first one regarding the inappropriate and possibly illegal disposal of wild horses using a firearm. To the extent that this information was redacted because the Forest Service claims that the allegations were unsubstantiated, this entails a subjective determination that goes to the heart of the public's interest in knowing whether the Forest Service properly investigated

alleged misconduct. Accordingly, I conclude that further review by the Forest Service of its redactions pursuant to Exemption 6 is warranted to ensure that information was not withheld based on an overly narrow view of the public interest implicated by Plaintiff's request or based on a subjective determination that the information was related to unsubstantiated allegations.

I conclude that further review of the withheld information by the Forest Service will be more effective than in camera review by the Court since the Court is not in a position to judge whether the release of certain potions of information would enable Plaintiff or other members of the public to identify involved parties based on the particular dynamics of the affected Forest Service offices. In addition, while there was considerable delay in the Forest Service's response to Plaintiff's FOIA request, there are other circumstances which support yielding some deference to the Forest Service's redactions pursuant to Exemption 6. In particular, it is apparent that the Forest Service attempted to do targeted as opposed to wholesale redactions and has continued to release documents when errors or omissions are discovered.

I therefore decline to enter summary judgment in favor of either party on the applicability of Exemption 6 to materials withheld by the Forest Service but will re-visit this issue, if necessary, following the Forest Service's further review of these materials as set forth above.

### 3. Exemption 5

FOIA Exemption 5 allows a government agency to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency...." 5 U.S.C. § 522(b)(5). "In other words, it protects documents that would be covered by any privilege that an agency could assert in a civil proceeding." *Trentadue v. Integrity Comm.,* 501 F.3d 1215, 1226 (10th Cir. 2007). This includes the deliberative process privilege which shields "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Id.* (*quoting Dep't of the Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 8 (2001)). To be exempt as privileged under Exemption 5, a document must be both predecisonal, *i.e.* prepared in order to assist an agency decisionmaker in arriving at his decision, and deliberative. *Id.* at 1227. Non-factual materials that express opinions or recommendations are clearly deliberative. *Id.* Factual materials are also deliberative when they are inextricably intertwined with deliberative materials and their disclosure would reveal deliberative material. *Id.* at 1227-29.

The Forest Service's Revised *Vaughn* Index cites Exemption 5's deliberative process privilege to justify redactions of its investigation plan, internal emails, a 16-page draft report, and case assessment materials. Doc # 31-2, pp. 8, 9, 12 & 16. I conclude that the Forest Service's explanation of why Exception 5 was applicable to information in these documents is sufficient to meet its burden on this issue. In

particular, the Forest Service did not recite the same explanation for why the redacted information is exempt pursuant to Exemption 5 but rather provided unique descriptive details in each instance that it cited Exemption 5. I also note that there is no requirement under Exemption 5 that the Forest Service identify "concrete evidence of harm to a cognizable agency interest" before withholding information pursuant to Exemption 5 as alleged by Plaintiff. Implicit in Exemption 5 is recognition of an agency's interest in having open and frank communications among agency officials during the decisionmaking process. *Trentadue,* 501 F.3d at 1226 (citations omitted). The Forest Service is therefore entitled to summary judgment that its redactions pursuant to Exemption 5 are proper.

## IV. Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED that

1. Defendant's Motion for Summary Judgment [Doc # 27] is GRANTED IN PART and DENIED IN PART;

2. Plaintiff's Cross-Motion for Summary Judgment [Doc # 30] is GRANTED IN PART and DENIED IN PART;

3. The Forest Service is entitled to summary judgment on the threshold issue of the sufficiency of the evidence it submitted regarding Plaintiff's FOIA request;

4. The Forest Service is entitled to summary judgment on the issue of the reasonableness of its search for documents responsive to Plaintiff's FOIA request;

5.  The Forest Service is entitled to summary judgment on Plaintiff's general objections to the sufficiency of its Revised *Vaughn* Index except for its citations to FOIA Exemption 7(E);

6.  Plaintiff is entitled to summary judgment that FOIA Exemption 7(C) & (E) is inapplicable under the facts and circumstances of this case;

7.   The parties' request for summary judgment regarding the applicability of Exemption 6 shall be HELD IN ABEYANCE pending the Forest Service's review of the information it redacted pursuant to this Exemption consistent with this order;

8.  The Forest Service is entitled to summary judgment that its redactions pursuant to FOIA Exemption 5 were proper; and

9.  The Forest Service shall disclose all information redacted pursuant to FOIA Exemption 7(E) to Plaintiff and advise Plaintiff and the Court of the results of its review of its redactions pursuant to FOIA Exemption 6 within thirty (30) days of the date of this Order.


Dated: May__23__, 2017 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock_____
LEWIS T. BABCOCK, JUDGE